(310 P.3d 1065)
No. 108,481

BUNGE MILLING, INC., *Appellee*, v. CITY OF ATCHISON, KANSAS, *Appellant*.

Opinion filed August 23, 2013.

*Patrick E. Henderson,* of Henderson Law Office, of Atchison, for appellant.

*Richard V. Eckert,* of Topeka, and *Quentin E. Kurtz,* of Stumbo Hanson, LLP, of Topeka, for appellee.

Before HILL, P.J., POWELL, J., and HEBERT, S.J.

POWELL, J.: The City of Atchison (City) appeals the district court's decision setting aside its ordinance establishing the annexation of Bunge Milling, Inc.'s (Bunge) property under K.S.A. 12-520(a)(1). The City argues Midland Surveying (Midland) acted as Bunge's agent when Midland filed a boundary survey of Bunge's property with the register of deeds. As the City would only have had the authority to annex Bunge's property if the *owners* had filed the survey under K.S.A. 12-519(e), the filing of a boundary survey by Bunge's agent would meet this requirement. Bunge argues its property was not subject to annexation because Midland was not its agent for the purpose of filing the survey.

Because we agree with the district court that Midland was not acting as Bunge's agent when it filed a boundary survey of Bunge's property with the register of deeds, meaning that the survey had not been filed by the "owner" of such tract, we affirm the district court.

## FACTUAL AND PROCEDURAL HISTORY

Bunge is the owner of four tracts of land totaling approximately 58.3 acres outside the City. Bunge hired Midland to conduct a property boundary survey of the land. The survey was completed on May 5, 2006, by Troy Hayes of Midland.

According to Bunge, the boundary survey was intended for the corporation's use to certify the boundary lines of the property and for taxation purposes. On May 12, 2006, Midland filed the boundary survey with the Atchison County Register of Deeds. Bunge never asked, directed, or expressly authorized Midland to file the boundary survey. However, a filing fee of $20 was charged, and Hayes added that $20 fee as an itemized cost onto Midland's invoice to Bunge.

Bunge claims it was unaware that the boundary survey had been filed until the City initiated the unilateral annexation action of the property in 2011. Hayes supported Bunge's claim by testifying that he had never informed Bunge that he had filed the boundary survey.

Hayes testified that he "typically file[s] all [his] surveys as a matter of professional courtesy. . . . [t]ypically, it's best, you know, for the surveyors that practice in the area on a regular basis to have access to that information and, you know, in the event that they would be working on an adjacent parcel or something like that." Hayes neither received a copy of the recorded survey nor sent a copy of the recorded document to Bunge.

Hayes' affidavit and his testimony before the district court explained that he filed the boundary survey with the Atchison County Register of Deeds because such a filing was a requirement of his professional license as a Kansas land surveyor under Kansas Administrative Regulation (K.A.R.) 66-12-1. K.A.R. 66-12-1(c) (2006) adopted by reference the "Kansas Minimum Standards For Boundary Surveys and Mortgagee Title Inspections Standards of Practice" as the minimum standards for the practice of land surveying. The register of deeds for Atchison County filed the boundary survey as a "survey" in the "unplatted lands index."

The City commenced the process of unilateral annexation by the adoption of Resolution #2805 on April 18, 2011. K.S.A. 12-

520(a)(1) provides that a city may annex land if the "land is platted, and some part of the land adjoins the city." K.S.A. 12-519(e) defines the term "platted" as "a tract or tracts mapped or drawn to scale, showing a division or divisions thereof, which map or drawing is filed in the office of the register of deeds *by the owner of such tract.*" (Emphasis added.) The City relied on the survey of Bunge's property as prepared and filed by Midland.

The district court concluded that Hayes' survey constituted a "platting" of land under K.S.A. 74-7003(m), which required him to file the survey because K.A.R. 66-12-1(c) (2006), adopting the minimum standards for the practice of land surveying, has the force and effect of law. The district court held that there was "no evidence in the record that would attribute Midland's filing of the boundary survey to its principal, Bunge Milling." The district court used the word "principal" to describe Bunge once but never specifically made a finding whether Midland was an agent of Bunge. Interpreting K.S.A. 12-519(e), the district court explained that if the legislature had meant to allow anyone to file a qualifying "plat" for annexation purposes, then the legislature would have omitted the words "by the owner." The district court held that the City lacked authority to unilaterally annex Bunge's property under K.S.A. 12-520(a)(1) and accordingly set aside the City's annexation of the property.

## DID THE CITY PROVIDE ENOUGH EVIDENCE TO ESTABLISH THE EXISTENCE OF AN AGENCY RELATIONSHIP BETWEEN BUNGE AND MIDLAND?
## IF SO, DID AN AGENCY RELATIONSHIP EXIST?

The City argues that the district court incorrectly set aside its annexation of Bunge's property because Midland acted as Bunge's agent and Bunge never repudiated Midland's act of filing the survey. Conversely, Bunge argues that Midland was not its agent for the purpose of filing the survey, the City failed to prove the existence of an agency relationship between Bunge and Midland, and Midland's act of filing was repudiated and never ratified by Bunge. Answering these questions require us to interpret the relevant Kan-

sas statutes and to determine whether an agency relationship existed between Bunge and Midland.

*Standard of Review*

"Interpretation of a statute is a.question of law over which this court has unlimited review." *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). With regard to statutory construction, the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009).

What constitutes a principal/agent relationship and whether there is competent evidence reasonably tending to prove such a relationship is a question of law. However, resolution of conflicting evidence that might establish the existence of a principal/agent relationship is a question for the finder of fact. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446, 827 P.2d 24 (1992). The parties have not produced conflicting evidence; rather, they disagree on whether the given evidence tends to prove the existence of an agency relationship between Bunge and Midland. As a question of law, this court has unlimited review. *Town Center Shopping Center v. Premier Mortgage Funding, Inc.*, 37 Kan. App. 2d 1, 6, 148 P.3d 565 (2006), *rev. denied* 283 Kan. 933 (2007).

*Analysis*

The language in K.S.A 12-520(a)(1) is clear and unambiguous. K.S.A 12-520(a)(1) provides that a city may annex land if the "land is platted, and some part of the land adjoins the city." K.S.A. 12-519(e) defines the term "platted" as "a tract or tracts mapped or drawn to scale, showing a division or divisions thereof, which map or drawing is filed in the office of the register of deeds *by the owner of such tract*." (Emphasis added.) The parties agree that the first four elements in the definition of "platted" were met by the filed survey. The disagreement is whether the requirement that the sur-

vey be filed "by the owner" was satisfied by Midland's filing of the survey in 2006.

In this case, it is undisputed that Bunge owned the property being annexed by the City. As a statutory entity, a corporation is required to act through its directors, officers, employees, or agents. See *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 503, 14 P.3d 1149 (2000). On appeal, the City maintains that Bunge acted through an agent—Midland—when the survey was filed, meaning the survey had been filed by the owner. However, in the March 13, 2012, hearing before the district court, the City spent little time establishing the existence of an agency relationship between Midland and Bunge. The district court, in its order, also did not discuss whether an agency relationship existed between Midland and Bunge. Rather, the district court focused on the reason Midland filed the survey. It found that Midland, independent of any client's direction, was required to file the survey under K.A.R. 66-12-1(c) (2006) and K.S.A. 74-7003(m), and there was no evidence in the record that attributed Midland's filing of the survey to Bunge.

*No Agency Relationship Between Midland and Bunge*

We think the first inquiry should be whether the City met its burden of proof to show that an agency relationship existed between Midland and Bunge before we assess the motives behind Midland's filing of the survey. Midland's actions could only be attributed to Bunge for the purposes of K.S.A. 12-519(e) if Midland had acted as Bunge's agent with regard to the filing of the survey.

An actual agency relationship may be express or implied.

" 'An express agency exists if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. An implied agency may exist if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal.' [Citation omitted.]" *Golden Rule Ins. Co. v. Tomlinson*, 47 Kan. App. 2d 408, 422-23, 277 P.3d 421 (2012) (quoting *Barbara Oil Co.*, 250 Kan. at 446), *rev. granted* May 20, 2013.

There is no evidence in the record to establish the formation of an express agency relationship because it is undisputed that Bunge never directed or authorized Midland to file the survey.

With regard to whether an implied agency relationship existed between Midland and Bunge, our Supreme Court set out the test for the existence of an implied agency in *Barbara Oil Co.*, 250 Kan. at 448-49:

"The test utilized by this court to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it appears there was an implied intention to create an agency, in which event the relationship may be held to exist, notwithstanding either a denial by the alleged principal or whether the parties understood it to be an agency. [Citation omitted.]

"An agency is implied if, from statements of the parties, their conduct, and other relevant circumstances, it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which, when exercised, would normally and naturally lead others to believe in and rely on the acts as those of the principal. While the relationship may be inferred from a single transaction, it is more readily inferable from a series of transactions. An agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable. [Citation omitted.]"

Bunge argues that the City failed to provide sufficient evidence to show the existence of an agency relationship between Bunge and Midland. "The party asserting that an agency relationship exists has the burden of establishing the existence of the agency with substantial evidence that is clear and convincing in quality." *Bichelmeyer Meats v. Atlantic Ins. Co.*, 30 Kan. App. 2d 458, 464, 42 P.3d 1191 (2001).

Bunge is correct that the record provides very little evidence regarding the conduct of, or communications between, Bunge and Midland. Bunge, through the affidavit of its Milling Operations Manager, admitted to "commissioning" Midland to conduct a survey of the property boundaries for Bunge's own use. According to Hayes' testimony, before Bunge hired Midland to conduct the boundary survey, Midland was working with the engineering firm Bunge had hired. Hayes testified that the engineering firm put Midland "in touch with Bunge and Bunge kind of extended our services to include a boundary survey in addition to the topographic survey work that we were doing." Bunge and Midland executed what Hayes described as a "standard purchase order." The pur-

chase order is not provided in the record. Hayes explained that most of his communication was through the engineering firm rather than directly with Bunge, and that Midland had not prepared any documents that described the scope of work Midland intended to complete for Bunge.

Both parties agree that Midland had the authority to conduct the survey. However, the City failed to meet its burden to provide "substantial evidence [of an agency relationship] that is clear and convincing in quality." *Bichelmeyer Meats*, 30 Kan. App. 2d at 464. There is no evidence suggesting that Bunge intended Midland to act on its behalf with regard to the filing of the survey, that Bunge intended third parties to rely on Midland's actions to assume Midland was Bunge's agent, or that Bunge had the right to control how Midland conducted and created the boundary survey.

In *Highland Lumber Co., Inc. v. Knudson*, 219 Kan. 366, 372, 548 P.2d 719 (1976), our Supreme Court affirmed the district court's finding that Highland Lumber did not meet its burden of proof to show an agency relationship existed between the owner of the property (Knudson) and the construction contractor (Boyce). Knudson had hired Boyce to construct a building on Knudson's property. Boyce ordered materials for the project from Highland Lumber but failed to pay. Highland Lumber sued Knudson to recover its payment. Highland claimed Boyce was Knudson's agent because Knudson had changed the construction plans after Boyce had begun working, consulted with Boyce regarding the construction, helped work on rainy days, and at various times had the men stop working and wait. After reviewing conflicting evidence, the district court found that Highland had failed to provide sufficient evidence of an agency relationship between Boyce and Knudson.

In this case, the City failed to produce even as much evidence of contact between the potential principal and agent as was presented in *Highland Lumber*. Without sufficient evidence of an implied agency relationship, it is difficult to see how we can conclude that Midland's action of filing the survey satisfied the dictates of K.S.A. 12-519(e) that the survey be filed "by the owner" of the property.

*Foreseeability*

Relying on *Commerce Bank of St. Joseph v. State*, 251 Kan. 207, 210, 833 P.2d 996 (1992), the City attempts to salvage its position by asserting that Hayes, Midland's employee, was ethically and legally required to file the survey pursuant to K.A.R. 66-12-1(c) (2006), thereby giving Midland the authority to file the boundary survey because it was a foreseeable and reasonably necessary action stemming from the nature of the agency and the duties relating to it. We reject such an argument for the same reasons the district court did. Hayes was ethically and legally required to file the survey regardless of the nature of Midland's relationship with Bunge. Moreover, to adopt such a position would render the phrase "by the owner" meaningless because any owner of land who wished to have a survey done by a professional surveyor, but who wanted to avoid annexation, could not do so as the owner's survey would have to be filed by the surveyor, making the property subject to annexation anyway.

*Failure to Repudiate or Failure to Ratify*

As a final effort to prove an agency relationship between Bunge and Midland, the City points out that Bunge never took any actions to repudiate Midland's filing of the survey. It is true that repudiation by the principal may be necessary if an agent commits an act outside the scope of the agency. "[O]nce a principal knows of an agent's unauthorized actions, it cannot sit back and see if it will benefit or suffer from the agent's actions. Instead, a principal who receives notice of an unauthorized act of an agent must promptly repudiate the agent's actions or it is presumed that the principal ratified the act." *Foley Co. v. Scottsdale Ins. Co.*, 28 Kan. App. 2d 219, 223-24, 15 P.3d 353 (2000). The City contends that Bunge never repudiated Midland's actions because Midland's filing was within the scope of the agency relationship entered into by Bunge.

Conversely, Bunge argues that Midland's filing of the survey was an unauthorized act that would have required ratification by Bunge in order for the filing to bind Bunge.

"Ratification is the adoption or confirmation by a principal of an act performed on its behalf by an agent that has acted without authority. *Brown v. Wichita State*

*University*, 217 Kan. 279, 287-88, 540 P.2d 66 (1975). The doctrine of ratification is based upon the assumption there has been no prior authority, and ratification by the principal of the agent's unauthorized act is equivalent to an original grant of authority. Once the principal discovers the agent's unauthorized act, the principal must promptly repudiate the act or the court will presume the principal ratified the act. The key to ratification is knowledge of the unauthorized act; without a showing of the principal's knowledge, the principal cannot be deemed to have ratified the act. See 217 Kan. at 287-88." *Town Center Shopping Center*, 37 Kan. App. 2d at 10.

Testimony from Hayes and Bunge confirm that Bunge did not know that Midland filed the survey until the City commenced the annexation process in 2011, a passage of time of 5 years. The City did not produce any evidence to refute those statements of fact. The City started the annexation process in April 2011, which only then gave notice to Bunge of the filed survey. Bunge promptly filed this lawsuit in July 2011. Therefore, Bunge could not have ratified Midland's actions before having knowledge of the filing, and Bunge could not have taken any actions to repudiate until 2011. Because Bunge was unaware of Midland's filing of the survey, the City cannot use Bunge's lack of action from 2005 to 2011 as evidence that Bunge knew it had an agency relationship with Midland.

Accordingly, we hold that Midland was not Bunge's agent for the purposes of filing the survey. Therefore, because Bunge's property does not meet the definition of being "platted" under K.S.A. 12-519(e), the City did not have the authority to unilaterally annex Bunge's property under K.S.A. 12-520(a)(1). The district court correctly set aside the City's Ordinance No. 6406 establishing the annexation of Bunge's property.

The district court is affirmed.