NOT DESIGNATED FOR PUBLICATION

No. 121,377

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEANNINE WILLIAMS, LLC,
d/b/a Route 92 Bait & Quick Shop,
and
JEANNINE WILLIAMS,
*Appellants*,

v.

ICE MASTERS, INC., COMMERCIAL CLAIMS, INC.,
BUTLER & ASSOCIATES, P.A., and ZACHARY KING,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed May 28, 2021.
Affirmed.

*Donna L. Huffman*, of The Law Office of Donna L. Huffman, of Oskaloosa, for appellants.

*Daniel F. Church*, of Morrow Willnauer Church, L.L.C., of Kansas City, Missouri, for appellees
Butler & Associates, P.A., and Zachary King.

*Merle E. Parks*, of Evans & Mullinix, P.A., of Shawnee, for appellee Commercial Claims, Inc.

Before ARNOLD-BURGER, C.J., POWELL and CLINE, JJ.

POWELL, J.: Jeannine Williams and Jeannine Williams, LLC, d/b/a Route 92 Bait
& Quick Shop filed this suit alleging several claims, including violations of the Kansas
Consumer Protection Act (KCPA), K.S.A. 50-642 et seq.; abuse of process; and civil

1

conspiracy. The district court granted a motion to dismiss Williams' KCPA claim. Later, the district court also granted summary judgment on Route 92's remaining abuse of process and civil conspiracy claims. Williams and Route 92 appeal the dismissal of the KCPA claim, abuse of process, civil conspiracy, and the denial of discovery sanctions. We find no error and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

This Johnson County case finds its genesis in a different case filed in Jefferson County. There, an ice machine owned by Ice Masters, Inc. was destroyed in a fire at Route 92's store on December 26, 2012. Route 92 denied responsibility for the damages. Ice Masters hired Commercial Claims, Inc. (CCI) to collect the money for the destroyed ice machine. After an unsuccessful effort to collect, CCI retained the law firm of Butler & Associates, P.A., to represent Ice Masters in the debt collection effort.

Zachary King, a lawyer at Butler, sent Route 92 a presuit demand letter on March 28, 2014. Route 92 disputed the debt. King advised CCI of Route 92's defenses.

On July 1, 2014, Butler filed a lawsuit on Ice Masters' behalf in Jefferson County District Court, seeking recovery for the value of the destroyed ice machine. CCI questioned whether the lawsuit was filed with Ice Masters' authorization. Butler determined the lawsuit was filed prior to receiving authorization due to a clerical error. CCI contacted Renae Blackwell, its Ice Masters contact, and asked if Ice Masters wished to continue with the suit. Blackwell advised CCI to proceed, and CCI sent a letter to Ice Masters informing it the suit would proceed unless Ice Masters said otherwise.

Eventually, the Jefferson County District Court dismissed Ice Masters' breach of written contract and bailment claims but allowed Ice Masters to proceed on its breach of implied contract claim. Route 92 filed counterclaims, and Williams sought to join the

2

lawsuit in her individual capacity. The district court denied Route 92's effort to add Williams and dismissed Route 92's counterclaims. The Jefferson County District Court then granted Ice Masters' motion to dismiss its own claim with prejudice.

On April 7, 2017, Williams and Route 92 (plaintiffs) filed suit against Ice Masters, Butler, King, and CCI (defendants) in Johnson County District Court. Plaintiffs filed a second amended petition alleging: (1) malicious prosecution and abuse of process against all defendants; (2) negligence, misrepresentation, and constructive fraud against all defendants; (3) negligence per se against Butler and CCI; (4) civil conspiracy against all defendants; (5) conversion against Ice Masters; (6) KCPA violations against all defendants; and (7) breach of contract against Ice Masters. Only Williams brought the KCPA and breach of contract claims; all other claims were brought by both plaintiffs.

The defendants filed motions to dismiss. The district court heard oral arguments on the motions and found Williams lacked standing to bring any individual cause of action because Williams was not named in the original suit and, as a result, could not show a cognizable injury. The district court also dismissed all of Route 92's claims except for abuse of process and civil conspiracy.

Ice Masters settled with Route 92, and the claims were dismissed with prejudice.

The defendants then filed motions for summary judgment on the remaining claims. Route 92 opposed summary judgment and sought discovery sanctions against the defendants. At the summary judgment hearing, the district court denied Route 92's request for discovery sanctions but took the summary judgment matter under advisement.

The district court issued a written summary judgment order finding Route 92 did not comply with Kansas Supreme Court Rule 141 (2021 Kan. S. Ct. R. 220) because Route 92 did not compose its facts in the required form. The district court found the

3

response was "not in a form from which the Court can discern a cohesive narrative which would controvert defendants' statement of fact and preclude summary judgment." As a result, the district court found the defendants' facts were uncontroverted. The district court found Route 92 could not allege the filing of the original lawsuit was illegal or improper because the defendants were pursuing a valid claim for the value of the lost ice machine. Because the defendants showed they did not make an unauthorized use of process and Route 92 did not provide competent evidence to the contrary, the district court granted summary judgment in the defendants' favor on Route 92's abuse of process claim. The district court also granted summary judgment on Route 92's civil conspiracy claim because an independent claim to support civil conspiracy no longer existed.

Williams and Route 92 timely appeal.

ANALYSIS

Before the arguments are discussed, a brief point to provide clarity will be helpful. There are two plaintiffs/appellants in this case: Jeannine Williams, an individual, and Jeannine Williams, LLC d/b/a Route 92 Bait & Quick Shop. The appellants' brief refers to Williams throughout without distinguishing between the parties. But the two parties are separate entities. See K.S.A. 2020 Supp. 17-7688. This distinction is important because the two plaintiffs are involved in different issues of the appeal. The KCPA appeal is brought by Williams individually. The summary judgment and sanctions arguments arose after the district court dismissed Williams' claims and are being appealed by the LLC. To eliminate confusion, this opinion will refer to Williams in her individual capacity as Williams and refer to the LLC as Route 92.

Somewhat similarly, there are multiple defendants/appellees and multiple briefs. Butler & Associates and Zachary King, an attorney for Butler, are referred to as Butler,

4

and Commercial Claims, Inc. is referred to as CCI. Collectively, these parties are referred to as the defendants.

I.      DID THE DISTRICT COURT ERR WHEN IT DISMISSED WILLIAMS' KCPA CLAIM FOR LACK OF STANDING?

Williams argues her KCPA claim should be reinstated because the KCPA allows an individual to sue and Williams sued as an individual, not a corporation. Butler asserts Williams blended her individual capacity with her LLC. Butler argues Williams cannot bring a KCPA claim because she cannot allege an injury as only Route 92 was liable in the first suit. CCI agrees with Butler and notes that the Jefferson County District Court did not allow Williams to enter the first lawsuit when Route 92 attempted to join her.

*Standard of Review*

The existence of standing is a legal question reviewed de novo. "When a district court grants a motion to dismiss based on a lack of standing, the appellate court accepts the facts alleged in the petition as true, and if those facts demonstrate that the appellants have standing to sue, the decision of the district court must be reversed." *Kansas Building Industry Workers Compensation Fund v. State*, 302 Kan. 656, 676, 359 P.3d 33 (2015).

*Analysis*

In its order to dismiss, the district court dismissed all claims brought by Williams individually. Williams only appeals her KCPA claim's dismissal. The district court found Williams lacked standing because she could not show a cognizable injury, as any damages in the first suit would have been attributed to Route 92, not Williams individually.

5

Standing in Kansas is rooted in the separation of powers doctrine implicit in the Kansas Constitution. *Kansas Building Industry Workers Compensation Fund*, 302 Kan. at 678. To show standing, a person must demonstrate that "'[1] he or she suffered a cognizable injury and [2] that there is a causal connection between the injury and the challenged conduct.'" 302 Kan. at 678. The injury must be fairly traceable to the defendant's actions and not the result of a third party's independent action. 302 Kan. at 681. Standing generally requires a party to assert its own legal rights and does not allow a party to base its claim for relief on the legal rights or interests of third parties. *Peterson v. Ferrell*, 302 Kan. 99, 103, 349 P.3d 1269 (2015). If a party lacks standing to challenge a particular action, there is no justiciable case or controversy and the claim must be dismissed. *Lightner v. Lightner*, 46 Kan. App. 2d 540, 546, 266 P.3d 539 (2011).

Williams claims she had standing to bring her KCPA claim as an individual because she meets the definition of a consumer under the KCPA. The KCPA defines "'[c]onsumer'" as "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. 2020 Supp. 50-624(b). The KCPA instructs courts to construe the KCPA liberally to protect consumers. K.S.A. 50-623.

The district court ruled that Williams could not bring an individual claim because she did not suffer a cognizable injury, but Williams argues her personal guarantee to Ice Masters made her personally liable in the underlying collection lawsuit. *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322 (D. Kan. 1996), a federal district court case, provides a good analysis of this issue and has been cited by several panels of our court.

In *Wayman*, the federal district court noted K.S.A. 50-624(b) required an individual or sole proprietor to raise a claim, not a corporation or similar entity, because the KCPA limits consumers to individuals. Each plaintiff signed the contracts as individuals, and the contracts made no mention of the plaintiffs doing business as

corporations. Thus, the federal district court determined the agreements were between Amoco and an individual, not Amoco and another corporation. The federal district court found Amoco could enforce the agreements against the plaintiffs personally because, regardless of the corporation's existence, the plaintiffs assumed individual liability, making their KCPA claims individual too. The federal district court reasoned "the nature of the liability undertaken, not who 'picked up the tab,' should determine the nature of plaintiffs' KCPA claims." 923 F. Supp. at 1363-64.

Williams' KCPA claim is based on the defendants and Ice Masters bringing the first suit in Jefferson County to collect a debt for the ice machine's destruction. Defendants filed suit only against Route 92. Defendants and Ice Masters did not allege Williams would be personally liable. Therefore, unlike in *Wayman*, the basis for this KCPA claim is a lawsuit and agreement between Ice Masters—a corporation—and Route 92—an LLC. Williams was not personally liable.

Despite the first lawsuit being filed only against Route 92, Williams argues she still would have been personally liable because she made payments for Route 92 with her personal credit card and because Ice Masters required a personal guarantee to enter into a contract.

An LLC is a limited liability company formed under the laws of the State of Kansas and having one or more members. K.S.A. 2020 Supp. 17-7663(f). The debts, obligations, and liabilities of an LLC belong solely to the LLC, and no LLC member is personally obligated for any debt, obligation, or liability of the LLC, unless that member agrees to be so obligated. K.S.A. 2020 Supp. 17-7688. Moreover, while Williams may have acted as the guarantor for Route 96, "[t]he KCPA's protection is limited to individuals and sole proprietors who directly contract with suppliers for goods or services, and is not extended to individuals who promise performance of a corporation

7

contracting with a supplier." *CIT Group/Sales Financing, Inc. v. E-Z Pay Used Cars, Inc.*, 29 Kan. App. 2d 676, 685, 32 P.3d 1197 (2001).

Ice Masters' requirement of a personal guarantee to lease one of its ice machines does not give Williams a KCPA claim. When the defendants and Ice Masters filed suit to collect damages for the destroyed ice machine, they only sought to hold Route 92 liable. Williams was never at risk of being personally liable. Any potential injury was Route 92's alone. Because Williams cannot allege a cognizable injury resulting from the first suit, she lacks standing as an individual to file a KCPA claim against the defendants.

Finally, even if Williams had standing, it is likely that, under the KCPA, she would not meet the definition of a consumer because the ice machine was leased solely for use by Route 92. "When an asset is acquired to be used solely by a limited liability company, the 'business purposes' are those of the entity, and not those of a consumer." *Griffitts & Coder Custom Chopping, LLC v. CNH Industrial America LLC*, 438 F. Supp. 3d 1206, 1234 (D. Kan. 2020).

Williams did not allege a cognizable injury suffered by her as an individual. She therefore lacked standing to bring a claim under the KCPA, and the district court did not err in dismissing her claim.

II.   DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AGAINST ROUTE 92?

Route 92 presents several arguments in its appeal of the summary judgment order. First, Route 92 claims the defendants did not meet the threshold standard for summary judgment. For its second and third points, Route 92 asserts the district court erroneously concluded Route 92's evidence was inadmissible and did not resolve all evidence and inferences in Route 92's favor. Next, Route 92 alleges the district court erred in finding

Ice Masters was a willing participant because no evidence supported that finding. Last, Route 92 argues the district court ignored the evidence in finding that Route 92 did not allege facts to support an abuse of process claim.

Butler argues that because Route 92 did not comply with Kansas Supreme Court Rule 141 in its response to the summary judgment motion, the district court was correct to find the defendants' facts as uncontroverted. Given the uncontroverted facts, Butler asserts Route 92 failed to allege any facts to support the elements of its abuse of process claim, specifically that the original lawsuit was unauthorized by law. CCI concurs with Butler and points out that much of Route 92's argument lacks legal citation.

*Standard of Review*

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonable be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

"If the moving party shows the absence of facts to support an essential element of the nonmoving party's claim, that nonmoving party '"has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case."' [Citations omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015). Summary judgment should be denied if a genuine issue of material fact exists.

9

*Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). Direct evidence is not required to survive summary judgment; circumstantial evidence is enough. 301 Kan. at 768. But speculation is insufficient to avoid summary judgment. *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 960, 186 P.3d 829 (2008).

*Analysis*

A. *Threshold standard for summary judgment*

Route 92 first argues the defendants failed to meet the threshold standard for summary judgment. Route 92 does not cite to any controlling authority, but its chief complaint appears to be that neither Butler nor CCI provided any affidavits with their motions. In contrast, Route 92 points out that it provided 51 exhibits which included affidavits, deposition testimony, and documents from discovery in its opposition. Overlooking Route 92's incongruent comparison, the inclusion of affidavits is not the standard to determine if the threshold standard for summary judgment was met. K.S.A. 2020 Supp. 60-256(c)(2) states summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The defendants included ample documentation for the district court to consider. Whether the district court was correct in granting summary judgment we will discuss later.

B. *Kansas Supreme Court Rule 141/Admissibility of Route 92's evidence*

Route 92's next issue is with the district court's statement: "'Plaintiff is unable to point to any admissible statements of fact or contraventions of defendants' statements of fact that demonstrate the same.'" This statement is near the end of the summary judgment ruling. Route 92 ignores the district court's earlier finding that Route 92's "response is not

10

in a form from which the Court can discern a cohesive narrative which would controvert defendants' statements of fact and preclude summary judgment." As a result, the district court found Butler and CCI's facts to be uncontroverted per Kansas Supreme Court Rule 141. Only after finding the defendants' facts were uncontroverted did the district court find Route 92 could not point to facts that contradicted the defendants' factual statements.

Kansas Supreme Court Rule 141(b)(1) requires a party opposing summary judgment to list, in separately numbered paragraphs that correspond with the movant's memorandum, whether each of the movant's factual contentions are uncontroverted, uncontroverted for the purposes of the motion, or controverted. If the fact is controverted, the opposing party must "concisely summarize the conflicting testimony or evidence and any additional genuine issues of material fact" and provide precise references. Kansas Supreme Court Rule 141(b)(1)(C) (2021 Kan. S. Ct. R. 221). This rule flows from the summary judgment statute:

> "*Opposing party's obligation to respond*. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or by declarations pursuant to K.S.A. 53-601, and amendments thereto, or as otherwise provided in this section, set out specific fats showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." K.S.A. 2020 Supp. 60-256(e)(2).

A district court is only required to consider the facts and parts of the record properly cited by the parties in compliance with Rule 141. The district court may, in its discretion, consider other materials in the record, but it is not required to do so. *Acord v. Porter*, 58 Kan. App. 2d 747, 757, 475 P.3d 665 (2020). Rule 141(b) is not satisfied by merely stating that facts are controverted. *State ex rel. Stephan v. Commemorative Services Corp.*, 16 Kan. App. 2d 389, 401, 823 P.2d 831 (1991). Rule 141 grants the district court the discretion to deem the party opposing summary judgment as having

11

admitted the uncontroverted facts in the movant's statement, which "will not be disturbed on appeal without a clear showing of abuse." *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 604, 738 P.2d 1246 (1987).

Route 92 did not organize its response into corresponding factual statements, resulting in the district court's finding that it could not discern a cohesive narrative. "Rule 141 is not just fluff—it means what it says and serves a necessary purpose." *McCullough v. Bethany Medical Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984), *superseded by statute on other grounds as stated in Roy v. Young*, 278 Kan. 244, 93 P.3d 712 (2004). Route 92 did not comply with Rule 141; therefore, the district court acted within its discretion to find the defendants' facts were uncontroverted. Route 92 does not address the district court's finding on appeal, instead choosing to take issue with the district court's statement that Route 92 did not point to "admissible statements of fact." Failing to brief an issue results in that issue's waiver or abandonment. *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, 666, 809 P.2d 1216 (1991). On appeal, Route 92 cannot controvert facts which were already deemed uncontroverted; it is bound by those uncontroverted facts. See 248 Kan. at 666.

C.      *The summary judgment ruling*

Although a party opposing summary judgment does not need to prove its case, it does have an "'affirmative duty to come forward with facts to support its claim.'" *Acord*, 58 Kan. App. 2d at 757. Disputed facts do not present a genuine issue of fact and preclude summary judgment unless they have legal controlling force and affect the outcome of the case. 58 Kan. App. 2d at 757.

Butler alleges Route 92 did not allege sufficient facts to support each element of its abuse of process claim. The party opposing summary judgment must establish each

element of the cause of action to avoid summary judgment. *Dozier v. Dozier*, 252 Kan. 1035, 1041, 850 P.2d 789 (1993).

The elements of abuse of process are:

> """(1) [T]hat the defendant made an illegal, improper, perverted use of the process, (a use neither warranted nor authorized by the process), and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that the damage resulted to the plaintiff from the irregularity. . . .'" 1 Am. Jur. 2d 252, Abuse of Process, s 4." *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 646, 621 P.2d 411 (1980).

See *Wellsville Bank v. Sutterby*, 12 Kan. App. 2d 585, 589, 752 P.2d 700 (1988). If the process used is regular, the motive, ulterior or otherwise, of the alleged abuser is immaterial. *Porter*, 228 Kan. at 646. A party is protected when the process is valid and used for a legitimate purpose—even with a bad intention, it is not abuse of process. *McClenny v. Inverarity*, 80 Kan. 569, 573, 103 P. 82 (1909). The pattern jury instruction (PIK) offers a similar list of elements, based on *Porter*, substituting "unauthorized use of process" for "perverted use of process." PIK Civ. 4th 127.80. The PIK explains it is to be used "when the plaintiff is claiming that the defendant used the process of the court . . . in an improper or illegal manner." PIK Civ. 4th 127.80, Notes on Use.

### 1.      *Unauthorized use of the process*

The district court found the uncontroverted facts showed Route 92 could not prove the first element—that the defendants made an unauthorized use of the process. The district court could not find any Kansas caselaw defining what unauthorized use of the process meant, but it found several out-of-state cases that it relied on. Our review of Kansas law did not find any cases either, but several out-of-state cases and secondary sources provide consistent definitions.

13

The Iowa Supreme Court adopted the definition from the Restatement (Second) of Torts that an abuse of process is "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986). The Iowa Supreme Court noted the use of "primarily" was significant because no action for abuse of process exists where the process is used for its intended purpose but where there "is an incidental motive of spite or an ulterior purpose or benefit." 389 N.W.2d at 663. As an example of abuse of process, the Iowa Supreme Court provided some form of extortion where the process is used to pressure the other party to pay a different debt or to take or refrain from some other action. Finally, the Iowa Supreme Court held a defendant is not liable for abuse of process if the defendant "has done no more than carry the process to its authorized conclusion, even with bad intentions." 389 N.W.2d at 663.

The other out-of-state cases cited by the district court agree with *Grell*. The Kentucky Supreme Court also adopted the definition from the Restatement (Second) of Torts in *Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 113 (Ky. 2010). The Kentucky Supreme Court held abuse of process has two essential elements:  (1) an ulterior purpose; and (2) "a willful act in the use of the process not proper in the regular conduct of the proceeding." 307 S.W.3d at 114. A definite act or threat not authorized by the process or aimed at the objective is required for abuse of process. 307 S.W.3d at 114. The Kentucky Supreme Court found an abuse of process in *Sprint* when the plaintiff claimed the defendant was trying to pressure the plaintiff into selling land beyond what the defendant could claim in a condemnation action. 307 S.W.3d at 114-15.

The Missouri Court of Appeals held:  "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim." *Wells v. Orthwein*, 670 S.W.2d 529,

14

532 (Mo. Ct. App. 1984). Only when the suit is brought for a collateral purpose does an abuse of process occur. 670 S.W.2d at 532. The Texas Court of Appeals used the same three-element test as the Kansas courts in *RRR Farms, Ltd. v. American Horse Protection Association, Inc.*, 957 S.W.2d 121, 133 (Tex. App. 1997). The Texas Court of Appeals held abuse of process requires the defendant to use the process to accomplish an end beyond the purview of the process which compels a party to do a collateral action. 957 S.W.2d at 133. Compulsion is something more than just answering a lawsuit; filing a complaint is not an improper or illegal use of process. 957 S.W.2d at 134.

Other out-of-state cases agree with the cases relied on by the district court. See *Land Baron Inv. v. Bonnie Springs Family LP*, 131 Nev. 686, 668, 356 P.3d 511 (2015) ("We agree with the majority rule that filing a complaint does not constitute abuse of process. The tort requires a 'willful act' that would not be 'proper in the regular conduct of the proceeding,' . . . and filing a complaint does not meet this requirement."); *The Tavern, LLC v. Town of Alpine*, 395 P.3d 167, 179 (Wyo. 2017) (holding abuse of process arises from misuse of power of the court and "must be an act intended to perpetrate injustice, veiled in conduct claiming to be in the name of the court and under its authority").

Secondary sources also support the out-of-state cases. As noted by several out-of-state cases, the Restatement (Third) of Torts defines abuse of process as: "An actor is subject to liability for the abuse of judicially issued process to achieve an objective that is outside the purpose for which the process is intended." Restatement (Third) of Torts § 26 (2020). In comment b, the Restatement explains that process refers to the orders issued by the court on behalf of one of the parties or that are backed by judicial authority. Restatement (Third) of Torts § 26, comment b (2020).

Similarly, American Jurisprudence, Second Edition, explains that "abuse of process is the misuse of legal process to accomplish some purpose outside the scope of the process itself, and that abuse of process occurs where someone attempts to achieve

through use of the court that which the court is itself powerless to order." 1 Am. Jur. 2d, Abuse of Process § 1. The abuse of process tort is intended to prevent parties from using litigation to pursue alternative objectives and using the court's process to compel another party to act. 1 Am. Jur. 2d, Abuse of Process § 1. There is no liability where the defendant has only pursued a lawsuit to its authorized conclusion, no matter how "evil" the defendant's motives may be. 1 Am. Jur. 2d, Abuse of Process § 5. Abuse of process requires some overt act done in addition to commencing a lawsuit; filing or maintaining a lawsuit, even for improper purposes, is not enough. 1 Am. Jur. 2d, Abuse of Process § 11.

The out-of-state cases agree that the first element of abuse of process requires the plaintiff to prove the defendant's use of the process was unauthorized by law. This explanation is consistent with *Porter*, 228 Kan. at 646, that "'an illegal, improper, perverted use of the process'" is one unauthorized by law. In opposing summary judgment, Route 92 was required to show a genuine dispute of material facts that the defendants' use of the process was unauthorized by law.

Route 92 does not address the elements of abuse of process in its brief. Instead, Route 92 argues the district court made erroneous conclusory statements in finding there were not facts to support the abuse of process claim. Route 92's argument centers on its allegation that a written contract did not exist and the defendants knew it. Because the defendants knew there was no written contract, they knew there was no claim and Butler and CCI only maintained the claim to collect their fees.

Route 92's argument runs into two roadblocks. First, the initiation of a suit is not abuse of process, nor is maintaining the suit. See *Grell*, 389 N.W.2d at 663; *RRR Farms*, 957 S.W.2d at 134; 1 Am. Jur. 2d, Abuse of Process § 11. Second, Route 92 focuses on the written contract throughout its summary judgment argument and ignores the fact that the Jefferson County District Court allowed the defendants to maintain an action for breach of an implied contract in the original lawsuit. Moreover, the Johnson County

16

District Court found the defendants had probable cause in the original lawsuit. Route 92 does not challenge the finding of probable cause for breach of a written contract.

Route 92 makes several claims about the original suit, such as the defendants knew there was no written contract; the defendants knew Route 92's defense was an absolute bar to recovery; the defendants were seeking to collect their fees; and the defendants kept the suit going to force Route 92 to give up because of the expense. Route 92 does not explain how the defendants used the process to achieve an alternative, improper objective. Ice Master's ice machine was destroyed at Route 92's store. Ice Masters employed CCI to recover the cost of the destroyed machine. When they could not resolve the issue, CCI employed Butler to pursue legal avenues to recover the damages. Eventually, this led to the original lawsuit. Route 92 did not allege any facts to support a finding that the defendants' lawsuit was unauthorized by law. Summary judgment was proper.

### 2. *Ratification*

Route 92 claimed the original lawsuit was unauthorized because Butler and CCI initiated the lawsuit before getting approval from Ice Masters and then forced Ice Masters to maintain the lawsuit when it wanted to settle. In anticipation of an appeal, the district court also found, in the alternative, that the original lawsuit was authorized by Ice Masters because Ice Masters ratified the lawsuit.

Defendants claimed a clerical mistake resulted in the lawsuit being filed before Ice Masters authorized it, but they reached out to their contact at Ice Masters and received authorization to continue the lawsuit. In her affidavit, Linda Shriver, Ice Masters' CFO, stated only she had the authority to authorize the lawsuit and she did not do so, and Blackwell had no authority to authorize the lawsuit.

While Blackwell lacked the authority to approve the original lawsuit, Ice Masters actively participated in it, including sending documents, assisting in preparing responses to discovery requests, and participating in depositions. "'Ratification is the adoption or confirmation by a principal of an act performed on its behalf by an agent that has acted without authority. . . . Once the principal discovers the agent's unauthorized act, the principal must promptly repudiate the act.' [Citations omitted.]" *Bunge Milling, Inc. v. City of Atchison*, 49 Kan. App. 2d 325, 333-34, 310 P.3d 1064 (2013).

Route 92 does not dispute Ice Masters' participation in the original suit. In fact, Route 92's second amended petition alleges Ice Masters was an active participant in the original lawsuit. Route 92 alleges in its brief that the defendants coerced Ice Masters' participation. But this ignores the counterclaims filed by Route 92. Ice Masters could not exit a lawsuit when there were active claims against it.

Route 92 cannot prove an essential element of its abuse of process claim—the original lawsuit was unauthorized by law. Because Route 92 cannot prove an essential element of its claim, summary judgment was proper. See *Mortgage Electronic Registration Systems, Inc. v. Graham*, 44 Kan. App. 2d 547, 555, 247 P.3d 223 (2010) ("[W]hen a plaintiff presents no evidence of an essential element of his or her claim, "'there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."' [Citations omitted.]"). The district court correctly granted summary judgment on Route 92's abuse of process claim.

D.    *Civil Conspiracy*

Route 92's fourth argument is that its civil conspiracy claim should be restored because summary judgment on its abuse of process claim was improper. Civil conspiracy is a parasitic claim; it requires the commission of some other wrong that gives rise to a

18

cause of action independent of the conspiracy. *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984).

Here, that independent cause of action was Route 92's abuse of process claim. Because summary judgment was proper, there was no independent cause of action to also maintain the civil conspiracy claim. Summary judgment on civil conspiracy was proper.

III.     DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING DISCOVERY SANCTIONS?

Route 92 argues the district court should have awarded it sanctions against the defendants for their failure to fully participate in discovery and for withholding information. Defendants argue they fully answered the discovery requests and the district court found Route 92's claims were not relevant to the case.

*Standard of Review*

Route 92 provides the incorrect standard of review, arguing this is a statutory interpretation question reviewed de novo. The award of sanctions for discovery violations is reviewed for abuse of discretion. *Schoenholz v. Hinzman*, 295 Kan. 786, 798, 289 P.3d 1155 (2012). A district court abuses its discretion if its act is (1) one no reasonable person would take; (2) an error of law; or (3) an error of fact. *City of Neodesha v. BP Corp. North America, Inc.*, 50 Kan. App. 731, 775-76, 334 P.3d 830 (2014). The party asserting an abuse of discretion bears the burden of establishing its existence. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

*Analysis*

In addition to citing the wrong standard of review, Route 92 does not provide a citation to the record on appeal where the district court denied sanctions. Kansas Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) requires an appellant to begin with a citation to the appropriate standard of review and to provide a pinpoint reference to the location in the record where the issue was raised and ruled on. Route 92 does neither. Its twin failures to follow our Supreme Court's rules is sufficient to deem this issue waived. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

Even if we considered the merits of this claim, we find it difficult to determine a coherent argument from Route 92, primarily because of its failure to reference the district court's findings. Route 92 filed motions for sanctions against Butler and CCI. In its brief, Route 92 cites portions of depositions as evidence that the defendants did not provide all discovery requested. But Route 92 does not explain how the district court's denial was an abuse of discretion, only stating K.S.A. 60-237 required the district court to order payment of expenses.

An evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond. K.S.A. 2020 Supp. 60-237(a)(4). If a party disobeys a discovery order, the district court may issue several sanctions to address the disobedience. K.S.A. 2020 Supp. 60-237(b)(2)(A). If the district court orders sanctions, it must order the disobedient party to pay reasonable expenses, including attorney fees, unless the failure to obey was "substantially justified or other circumstances make an award of expenses unjust." K.S.A. 2020 Supp. 60-237(b)(2)(C).

Route 92's argument is an incorrect reading of the law. Route 92 wants payment of its expenses, but payment of expenses is only required when the district court orders

20

another sanction. No sanctions were ordered here because the district court found Route 92's argument was irrelevant.

Route 92 waived its argument by failing to cite the appropriate standard of review or pinpoint the location in the record where the district court ruled on this issue. Even if we were to decide this issue, Route 92 merely reasserts its claims before the district court without explaining how the district court erred. Nothing in the record shows the district court abused its discretion in not ordering sanctions.

Affirmed.